# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| CAROL CORL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10CV406 |
| | ) | |
| BURLINGTON COAT FACTORY OF | ) | |
| NORTH CAROLINA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

The instant matter comes before the Court on Defendant's Motion for Summary Judgment (Docket Entry 17). (See Docket Entry dated Aug. 24, 2011.)[1] For the reasons that follow, the Court will grant Defendant's instant Motion.

## Background

Plaintiff brought this suit against Defendant for "violation of Plaintiff's rights protected by the Age Discrimination in Employment Act, 29 U.S.C. § 621 [("ADEA")] and wrongful discharge based on State Law." (Docket Entry 1, ¶ 1.) Plaintiff began employment with Defendant on April 2, 2001, as a receiving supervisor. (Docket Entry 17-1 at 13.) Her duties included:

> processing incoming merchandise and placing it accurately and promptly out on the sales floor; processing all merchandise returns to vendors, merchandise transfers and removal of damaged merchandise; maintaining a clean, safe and organized receiving area; ensuring departmental adherence to [Defendant's] loss prevention policies and

---

[1] The Parties have consented to disposition of this case by a United States Magistrate Judge. (Docket Entry 9.)

> procedures; scheduling receiving employees for work;
> training new hires; and supervising department employees,
> including giving them written discipline and performance
> reviews.

(Docket Entry 18 at 3 (citing Docket Entry 17-1 at 15-19); see also Docket Entry 17-1 at 94.)

As of August 2, 2007, Defendant's standard operating procedures prohibited employees from holding merchandise for their personal purchase. (See Docket Entry 17-1 at 147.) Defendant changed this policy, effective April 8, 2009, to allow employees to hold merchandise for up to two days. (See id. at 148.)

On or about April 5, 2009, Plaintiff pulled two pairs of jeans and several shirts from the receiving area and put them in her office for her own later purchase. (Docket Entry 17-1 at 39.) One of the pairs of jeans was regularly priced at $19.99, but bore a second price sticker reflecting a price of $9.99. (Id. at 40.) During a routine audit, Karen Mower, a Regional Loss Prevention Manager, found the merchandise Plaintiff had pulled. (See Docket Entry 17-3 at 12.) According to Plaintiff, Mower asked Plaintiff to write out a detailed statement about the incident, which Plaintiff attempted to do. (Docket Entry 17-1 at 44.) Plaintiff asserts that Mower wanted Plaintiff to accept responsibility for putting the lower price sticker on the jeans, but Plaintiff refused. (Id. at 44-45.) Mower crumpled up each statement in which Plaintiff indicated she did not know who had changed the price. (Id. at 45.)

2

Mark Ackerman, the Operations Assistant Store Manager (see Docket Entry 17-4, ¶ 2), understood that Plaintiff claimed she pulled the marked-down merchandise from the sale floor (which could explain the mark-down) (id. ¶ 6; see also Docket Entry 17-3 at 17). However, Ackerman reviewed surveillance footage in which he saw Plaintiff remove merchandise from a new merchandise rack in the receiving area. (Docket Entry 17-4, ¶ 6; Docket Entry 17-3 at 10-12, 17.)

Glenn Hodge, the Regional Human Resources Manager (Docket Entry 17-6, ¶ 2), reviewed the findings of the investigation into Plaintiff's held merchandise (id. ¶¶ 3-4). Based on

> the fact the jeans were on hold for [Plaintiff] in the receiving office, that the merchandise's price had been improperly reduced on a markdown sticker, that no adequate explanation had been given by [Plaintiff] as to how the price had been changed, and Loss Prevention's conclusion, based on the surveillance footage, that Plaintiff had lied about where she originally obtained the jeans, [Hodge] concluded that termination was warranted.

(Id. ¶ 4.)[2]  Accordingly, Defendant terminated Plaintiff's employment on April 23, 2009, citing the fact that she held

---

[2] At the time of this investigation and review, Hodge was 63 years of age. (Docket Entry 18 at 7 (citing Docket Entry 19, ¶ 7).) Defendant submitted the sealed Declaration of Marge Williams in connection with its instant Motion. (See Docket Entry 19; see also Docket Entry 22 (granting Defendant's Motion to Seal said Declaration in order to protect personal privacy of mentioned individuals).) That Declaration provides the birth dates of each individual involved in the investigation into and termination of Plaintiff, including that of Hodge, and corroborates Defendant's calculation of his age at the time of the incident.

merchandise for her own personal purchase for 3 to 4 days, in violation of company policy, and that the price on the merchandise was lowered such that Defendant would incur a loss upon its sale to Plaintiff. (Docket Entry 17-1 at 138.)

Based on the foregoing events, Plaintiff pursues a claim under the ADEA for age discrimination (Docket Entry 1, ¶¶ 18-25) and a state law claim for wrongful discharge pursuant to the North Carolina Equal Employment Practices Act ("EEPA"), N.C. Gen. Stat. § 143-422.1 et seq. (id. ¶¶ 26-31). Defendant filed the instant Motion for Summary Judgment (Docket Entry 17), to which Plaintiff responded (Docket Entries 27, 28) and Defendant replied (Docket Entry 29).

## Summary Judgment Standard

"The [C]ourt shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Such a genuine dispute exists if the evidence presented could lead a reasonable factfinder to return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). In making this determination, the Court must view the evidence and any reasonable inferences therefrom in a light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

4

The party moving for summary judgment may discharge its burden by identifying an absence of evidence to support the non-moving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). The non-moving party then must "set forth specific facts showing that there is a *genuine issue for trial*." Matsushita Elec. Indus., 475 U.S. at 586-87 (citation omitted) (emphasis in original). In this regard, the non-moving party must convince the Court that evidence exists upon which a finder of fact could properly return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 252 (citation omitted); see also Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 308 (4th Cir. 2006) ("Mere unsupported speculation is not sufficient to defeat a summary judgment motion if the undisputed evidence indicates that the other party should win as a matter of law.").

## **Proving Age Discrimination**[3]

"The ADEA provides, in relevant part, that '[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, *because of* such individual's age.'" Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 176 (2009) (quoting

---

[3] "Wrongful discharge claims asserted under the EEPA are analyzed under the same burden-shifting scheme as federal discrimination statutes." Hardin v. Belmont Textile Mach. Co., 355 F. App'x 717, 721 (4th Cir. 2009) (citing N.C. Dep't of Corr. v. Gibson, 308 N.C. 131, 136-38, 301 S.E.2d 78, 82-84 (1983)).

5

29 U.S.C. § 623(a)(1)) (brackets, ellipses, and emphasis in original). "The words 'because of' mean 'by reason of: on account of.' . . . [U]nder the plain language of the ADEA, therefore, a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision." Id.

"Generally speaking, a plaintiff may avert summary judgment and establish a claim for intentional . . . age discrimination through two avenues of proof." Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004) (en banc). "First, a plaintiff may establish a claim of discrimination by demonstrating through direct or circumstantial evidence that . . . age discrimination motivated the employer's adverse employment decision." Id.[4] "The second method of averting summary judgment

---

[4] Even prior to the United States Supreme Court's decision in Gross, the United States Court of Appeals for the Fourth Circuit had recognized that, in the context of the ADEA, "motivated" meant "but-for" causation, i.e., that age "'must have actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome.'" Hill, 354 F.3d at 286 (internal citation omitted) (emphasis added) (quoting Reeves, 530 U.S. at 141, which in turn had quoted Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)). Indeed, the Fourth Circuit had adopted this understanding of the ADEA's causation standard much earlier. See Cline v. Roadway Express, Inc., 689 F.2d 481, 485 (4th Cir. 1982) ("[T]he narrow motivational [issue] central to any ADEA claim . . . [is] whether [the plaintiff] was discharged because of his age or more precisely, whether age was a determining factor in the sense that but for his employer's motive to discriminate against him because of his age, he would not have suffered the unfavorable action." (emphasis added) (internal citations, parentheses, and quotation marks omitted)). In this respect, the Fourth Circuit differed from some other circuits that, in pre-Gross ADEA cases, had permitted age to qualify as a "motivating" factor even if it did not play a determinative role in the adverse action. See,

6

is to proceed under a 'pretext' framework, under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually a pretext for discrimination." Id. at 285 (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252, 252-53 (1981), and McDonnell Douglas Corp. v. Green, 411 U.S. 792, 807 (1973)).[5]

---

e.g., Gorzynski v. Jet Blue Airways Corp., 596 F.3d 93, 106 (2d Cir. 2010) (holding that Gross changed meaning of "motivating" from that previously understood in Second Circuit). Accordingly, the use of the word "motivating" to describe the ADEA's causation standard in Fourth Circuit cases preceding Gross does not mean that such decisions lack continuing validity.

[5] The United States Supreme Court "has not definitively decided whether the evidentiary framework of McDonnell Douglas utilized in Title VII cases is appropriate in the ADEA context." Gross, 557 U.S. at 175 n.2 (internal citation omitted). The United States Court of Appeals for the Fourth Circuit, however, has endorsed the continued utilization of the McDonnell Douglas indirect proof scheme in ADEA cases in at least two unpublished decisions after Gross. See Duffy v. Belk, Inc., 477 F. App'x 91, 93 (4th Cir. 2012); Bodkin v. Town of Strasburg, Va., 386 F. App'x 411 (4th Cir. 2010). Judges of this Court and of other district courts in the Fourth Circuit also have taken that approach, see, e.g., Hill v. Southeastern Freight Lines, Inc., 877 F. Supp. 2d 375, 385 (M.D.N.C. 2012) (Beaty, C.J.); Pressley v. Caromont Health, Inc., No. 3:09-cv-460-FDW-DSC, 2010 WL 4625965, at *2 (W.D.N.C. Nov. 3, 2010) (Whitney, J.) (unpublished), aff'd, 414 F. App'x 566 (4th Cir.), cert. denied,    U.S.   , 132 S. Ct. 419 (2011); Wall v. Alderman Co., No. 1:08CV785, 2009 WL 5171819, at *5-6 (M.D.N.C. Dec. 21, 2009) (Dixon, M.J.) (unpublished), aff'd and adopted, No. 1:08CV785 (M.D.N.C. Mar. 26, 2010) (Tilley, S.J.) (unpublished), as have all federal appellate courts that have reached the issue, see Jones v. Oklahoma City Pub. Sch., 617 F.3d 1273, 1278-79 (10th Cir. 2010) ("[W]e conclude that [Gross] does not preclude our continued application of McDonnell Douglas to ADEA claims . . . [and, in so holding,] join all of our sibling circuits that have addressed this issue." (citing published decisions from First, Second, Third, Fifth, and Sixth Circuits affirmatively

7

**Discussion**

In the instant case, Plaintiff opts to proceed under the pretext approach, arguing that Defendant's proffered reason for firing her constituted a pretext for discriminating against her because of her age. (See Docket Entry 1, ¶ 20; see also Docket Entry 28 at 4-7.) Furthermore, "[Defendant] concedes, for purposes of this Motion only, that Plaintiff can make the minimal showing necessary for a *prima facie* case of age discrimination." (Docket Entry 18 at 11.) For present purposes, the Court thus need only consider whether Plaintiff has raised a material question of fact as to pretext. Viewing all of the evidence before the Court in the light most favorable to Plaintiff, she has failed to do so.

Plaintiff contends that "[Defendant's] allegation that [Plaintiff] was terminated due to 'holding' merchandise for later purchase is simply not supported by the evidence." (Docket Entry 28 at 6.) She argues that holding merchandise did not constitute "an offense for which an employee should be terminated" (id.), and Defendant does not contest this assertion (see Docket Entry 18 at 16 (citing Docket Entry 17-3 at 15-16, Docket Entry 17-5 at 6-7)). Plaintiff further asserts that Defendant first stated it terminated her for holding merchandise, then later changed its reasoning to

---

embracing McDonnell Douglas analysis in ADEA cases after Gross)); accord Sims v. MVM, Inc., 704 F.3d 1327, 1333 (11th Cir. 2013); Fleishman v. Continental Cas. Co., 698 F.3d 598, 604 (7th Cir. 2012); Shelley v. Green, 666 F.3d 599, 607-08 (9th Cir. 2012).

8

include improperly marking down the price of the merchandise, evidencing pretext. (Docket Entry 28 at 6.) The record does not support Plaintiff's argument.

Most importantly, the Separation Notice that Plaintiff received upon the termination of her employment states:

> On or about April 5, 2009 [Plaintiff] pulled incoming merchandice [sic] and held it for her low later purchase for 3 to 4 days. [T]he price on the merchandice [sic] was changed to a lower price than originally intended for sale. [Plaintiff] violated company policy by holding merchandice [sic] intended for the sales floor and the lower price on the merchandice [sic] would have caused [Defendant] to incur a loss.

(Docket Entry 17-1 at 138 (emphasis added).) The Notice thus clearly cites the price mark-down as part of the rationale for Plaintiff's firing. In addition, Plaintiff indicated in her Charge of Discrimination with the Equal Employment Opportunity Commission that her employer "said that a price tag had been changed on an article of clothing" although she denied making the change. (Docket Entry 17-1 at 142.)

Furthermore, Ackerman, the store manager, testified that the merchandise Plaintiff held had a mark-down sticker and that at least part of the investigation he conducted concerned whether Plaintiff marked down the merchandise. (Docket Entry 17-3 at 8-10; see also Docket Entry 17-4, ¶ 7 ("I also did not find it credible that anyone other than [Plaintiff] would reduce the price of merchandise she was holding for herself in the receiving office.").) Finally, Hodge, the Human Resources Manager who

9

recommended Plaintiff's firing, averred that he acted at least partly based on the fact that "the merchandise's price had been improperly reduced on a markdown sticker, [and] that no adequate explanation had been given by [Plaintiff] as to how the price had been changed . . . ." (Docket Entry 17-6, ¶ 4.) He also testified that he based his recommendation on the fact that Plaintiff "was holding merchandise, . . . changed the price of the merchandise by putting a marked down ticket on it, . . . and changing the price of the ticket is basically defrauding the company because it impacts our bottom line when you change the price of merchandise like that." (Docket Entry 17-5 at 6.) In the face of the foregoing record, Plaintiff has failed to show that Defendant altered its reasons for firing her after the fact.

Plaintiff has argued that Defendant "has not offered any evidence that shows [Plaintiff] marked down the merchandise." (Docket Entry 28 at 6.) The question, however, is not whether Defendant's reason for firing Plaintiff was well-founded; rather, the issue is what the decisionmaker <u>believed or understood</u> at the time of the decision. See <u>Price v. Thompson</u>, 380 F.3d 209, 214 n.1 (4th Cir. 2004) ("We note that mere mistakes of fact are not evidence of unlawful discrimination."); <u>Hawkins v. PepsiCo, Inc.</u>, 203 F.3d 274, 279 (4th Cir. 2000) (affirming summary judgment for employer where plaintiff, discharged for poor performance, "fail[ed] . . . to supply evidence that [decisionmaker] actually

10

believed [plaintiff's] performance was good"); Holder v. City of Raleigh, 867 F.2d 823, 829 (4th Cir. 1989) ("A reason honestly described but poorly founded is not a pretext, as that term is used in the law of discrimination."); Jordan v. Summers, 205 F.3d 337, 344 (7th Cir. 2000) ("Pretext is a lie, not merely a mistake.").

In this case, the record reflects that Hodge (who made the recommendation to fire Plaintiff) understood that marked-down merchandise had been found in Plaintiff's possession and concluded "that no adequate explanation had been given by [Plaintiff] as to how the price had been changed . . . ." (Docket Entry 17-6, ¶ 4.) He further indicated that he "believed [Plaintiff] engaged in fraudulent behavior." (Id.) The law does not permit this Court to assess the soundness of this decision. See Mereish v. Walker, 359 F.3d 330, 339 (4th Cir. 2004) ("It is not our place to second-guess the soundness of . . . managerial decisions under the guise of the ADEA. . . . [W]e are concerned only with ensuring that decision-makers are not improperly motivated by discriminatory animus."); Henson v. Liggett Grp., Inc., 61 F.3d 270, 277 (4th Cir. 1995) ("We have recognized the importance of giving an employer the latitude and autonomy to make business decisions . . . ."); see also Bacchus v. Tubular Textile LLC, No. 1:01CV00621, 2003 WL 21796550, at *6 (M.D.N.C. Mar. 19, 2003) (unpublished) ("Employers retain the right to make business decisions, even poor or inaccurate ones, so long as they do not violate the law." (citing Henson, 61 F.3d at 277)).

11

Although Plaintiff may view the decision to fire her as unfair, she has provided no evidence to suggest Defendant acted with discriminatory animus based on her age.

Defendant's brief in support of its instant Motion points out that, in her deposition, "Plaintiff admitted that he[r] claim of age discrimination relies exclusively on the terminations of two other employees at the [same] store who were over the age of 40, Stephen Robar [] and Hencil Cannon []." (Docket Entry 18 at 12 (citing Docket Entry 17-1 at 65-71).) Plaintiff did not know when or under what circumstances these firings occurred. (Docket Entry 17-1 at 68-69, 71.) According to Defendant, these two individuals had different job titles from Plaintiff (and from each other), had different supervisors, and had their employment terminated after Plaintiff following investigations by different people. (See Docket Entry 18 at 13-14.) Plaintiff does not dispute these assertions. (See Docket Entry 28 at 1-7.) Given the lack of any commonality in position or supervision, the evidence of Defendant's termination of these individuals has no bearing on Plaintiff's case. See, e.g., Sgro v. Bloomberg L.P., No. 05-731(FLW), 2008 WL 918491, at *10 (D.N.J. Mar. 31, 2008) (unpublished) (finding testimony of non-party former employee irrelevant where his boss had no supervisory role in plaintiff's employment), rev'd in part on other grounds, 331 F. App'x 932 (3d Cir. 2009). Furthermore, Plaintiff has presented no evidence of discrimination against Robar

12

or Cannon; although the record contains some testimony from each, none of it references their firings. (See Docket Entries 17-8, 17-9, 28-3, 28-4.)

In sum, the evidence, viewed in a light most favorable to Plaintiff, would not permit a reasonable factfinder to determine that the reasons Defendant gave for firing Plaintiff represented pretext for age discrimination.

## Conclusion

Defendant has provided a non-discriminatory reason for its firing of Plaintiff. Plaintiff, in turn, has failed to show that record evidence raises a material question of fact regarding whether Defendant's explanation constitutes pretext for age discrimination.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Docket Entry 17) is **GRANTED** and that Plaintiff's Complaint is **DISMISSED,** pursuant to a contemporaneously filed Judgment.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

April 11, 2013